Your Honor, the convictions in this case should be vacated in this matter, remanded for retrial, based on the District Court's failure to permit the admission of the U.S. Naval Astronomical Chart because the failure to do that under Federal Evidence 201 meant that Mr. Vasquez was denied the right to present a defense under Stever. Let's focus on that because I think it's the heart of this case. Let's start by assuming that your argument is correct, that the chart was relevant and should have been admitted. Why is this just not simply evidentiary error as opposed to constitutional error? The defense your client put on was a lack of intent. I didn't know that they were going to be, I didn't know they were smoking marijuana. I just thought I was at a legitimate job. The ability of the agent to see would make a big difference if your client said he wasn't there, but he was and he was arrested there, so there wasn't any dispute about that. So I don't understand how the absence of the chart, which I think should have been admitted, deprived you of the ability to make a defense. Could you address that? Yes, Your Honor. The distinction between a simple failure to admit because there was a violation of an evidentiary rule as opposed to something of a constitutional magnitude, which is what we have here, is the fact that Mr. Vasquez had the right to present evidence that might influence the determination of his guilt. Yeah, but the question is whether you were deprived of the ability to present a defense because otherwise, that's constitutional. If you just didn't get in some evidence that might have been helpful, we view it under a different standard. And I don't see how the difficulty is the only thing that the agent's ability or inability to see would have done, in my mind, was go to whether or not your client was there. There's plenty of evidence your client was there. He doesn't deny that. There's other evidence that your client was participating in various things. So what the agent saw or didn't see when he looked at the scene on the beach doesn't seem to really be very critical in this case in terms of your client's case. That's what I'm having trouble with. So tell me why. Tell me why if you'd gotten this in, it would have been so important. All right. Well, in addition to saying or establishing that my client was there is the fact that the summary case agent, Border Patrol agent Carroll, said nobody was hanging back. And then there was a cooperating defendant who said nobody's hanging back. And so there was a cooperating defendant who actually testified to that. There was a cooperating defendant, Diaz-Dado, said everybody, well, he didn't say it in those words, he said everybody was there to participate. And the other defendant, in his statement to the police, says essentially the same thing. But that's my question. Is it that you would have put on a defense that your client was hanging back? That would have helped a defense that your client was hanging back? I'm trying to figure out what it is that, what it is. The agent said, I couldn't pick your client out of the crowd. I didn't know which one your client was. So I'm not saying I saw him do anything in particular. I saw a group of people move down towards the boat and then they run to the beach and they arrest your client there. So how does it, how does it go to the gut of your defense? Well, the co-defendant Garcia was acquitted. Right, because they found him, they didn't find him on the beach. And so he had an argument that when I got there, I found out what these guys were doing and I took off. Right. And so while that places into grave doubt the veracity of things that were said in the post-arrest statements to the ICE agent in Camarillo, all you have basically is mere presence. That was the defense that was forwarded by Mr. Vasquez. And so how does the agent's inability to see clearly affect your mere presence defense? Well, because if he's not actually involved in the unloading process the way they said he was, because they weren't able to actually observe that because they had no illumination from the moon. But isn't this, this is a conspiracy charge, right? It's a conspiracy charge and there are some subset of cases that relate to it. And there's evidence that your client recruited others to come there and he's there at 1.30 in the morning on a beach as a boat pulls in. Well, there's evidence that he asked Garcia to join him to unload two containers. And so when he comes to the beach the previous evening, he doesn't actually go down to the beach. He's taken in the recreational vehicle. They wait up on the PCH. Nothing happens for a couple hours. They turn around and go back to L.A. County. The second night they arrive again, this time with Garcia and Vasquez together, both of whom, according to the record evidence, were there with the understanding that they were there to unload containers. Now, I realize that there is some question concerning whether that was reasonable or reasonable. Yeah, there's enough evidence to go to the jury. We're not fighting about that. Right. But other than that, other than the fact that they were there and the record evidence suggested they were to unload containers, there's no evidence in terms of a conspiracy or an agreement on their part to unload packages or bales of marijuana from Las Vegas. Let me try this again because I understand that's a defense. I don't know what that has to do with being able to see. That's what Judge Reinhart and I are asking the same question. Your defense is a state-of-mind defense. It's that I went to the beach to unload containers. I didn't know they were going to contain marijuana. The agent says, I saw everybody go down towards the boat. People started to move down towards the boat and then we went in and arrested. Let's assume that that testimony was removed from the record for a moment. Does your client have any better defense than he did when it was in the record? He does because he then is able to establish that the testimony of the agent coupled with the testimony of the cooperator, that everybody was involved, was not a pivotal fact in the case that the jury could then use. That has nothing to do with whether you could see what they were doing. You're talking about what was inside the containers. Did they know it was marijuana? No, it's what you could actually see. If you have a Border Patrol agent saying nobody's hanging back, it means everybody's participating. He's found on the beach. He's not exactly like Garcia. The problem was that he knew they were containers, but he didn't know it was marijuana. There were no containers on the beach. They were expecting to see containers. And your client says that. Your client says in his statement, I went there to do something innocent. I understand that you want to... I don't know whether it was innocent per se, but it was not to unload marijuana. And that's what the government has to prove. Fair enough. Follow me through on this because Judge Reinhart and I are concerned about the same thing here. Your client's defense is, look, I went to the beach to do something, but I didn't go to the beach to unload marijuana. So I'm not denying I was there. I'm not denying I went to the beach to unload something. And it turns out what he unloaded was marijuana. Everybody agrees with that. What was unloaded was marijuana. The agent says, I could see a bunch of people on the beach. I couldn't make out your client. I don't know who he was. And I saw a bunch of them move down, all of them move down towards the boat. That's perfectly consistent with your client's defense that I was there to pick up something, but I didn't know it was marijuana. And then we swoop in and arrest them all before they can unload the boat. Maybe one or two or three parcels get unloaded. So I'm still having trouble figuring out why any of that hurts your defense that, yeah, I went there, but I didn't know it was marijuana. Well, it hurts the defense because under DePetris v. Kuykendall, this circuit has said that the defendant should not be precluded from fully developing this defense. Just a minute. Even under that case, when we're talking about constitutional error, one of the prongs of constitutional error is that the probative value of the excluded evidence is the central issue of the case. And all my colleagues are trying to get you to talk about, and I don't want to get you off, I want you to think about it. I have a tough time seeing why whether one can see on that beach is the central issue of the case. Your client has arrested on the beach. You got to cross-examine the witness, even though you didn't put in all this evidence. You asked, did you see my client hold a package? And he couldn't say he could. And then you had Martinez, who says, your client admitted he'd been on the beach the night before, admitted he waited for three hours and went home, admitted being offered $350 to go down and offload the boat, and then he says, and not only that, he admitted he knew he was offloading marijuana, but the marijuana isn't in his notes. Isn't that what it is? Well, I don't want to get sidetracked on what was said to Agent Martinez, but actually the $350 was the other defendant. I'm sorry, Garcia said that. It's okay, though, it doesn't matter, because what's important in terms of your question is the central issue of mere presence in putting on this defense, is that my client is hurt by the fact that you've got two witnesses saying that with the benefit of the moonlight, we could see that nobody was holding back. And the jury can then say, okay, well, since mere presence is the issue, we've got two witnesses who say nobody's holding back, in particular Vasquez not holding back, meaning we now have some additional evidence to the fact of his mere presence to make a determination of guilt or innocence. That would make some difference if your client's defense, your client's defense in this case was, oh, I was there, and I was there to unload packages. I just didn't know what was in them. So the fact that whether he held back or didn't hold back, I'm not sure gets to the nature of the defense. That's my problem. Well, no, he was merely present in terms of what was alleged in the indictment in the sense that he didn't have the requisite guilty knowledge to have entered an agreement to possess with the defendant. So what is the fact that in the agent's testimony that I saw people move down towards the boat to unload things, why is that inconsistent at all with your client's defense that I was there to unload, in my mind, something other than marijuana? Well, I think it boils down to the fact that he was deprived of an evidentiary basis for his defense. But that's different than being deprived of the defense. That's why I'm focusing on it. We measure that under a different… Well, yes, he had the right to argue his defense the same way the defendants in the other cases that we cited before the Supreme Court had the opportunity to argue self-defense but then were deprived of corroborating evidence to whatever they had asserted so that what we had here was an argument standing alone without an evidentiary basis to support it. What we had was a judge… What assertion did your client make that he was deprived of the evidentiary ability to support? When he moved into evidence the astronomical chart, which was denied… No, I understand it was denied. …relevancy ground… No, well, what… …and then reopened on that. What would that have shown that would have supported your client's case? Well, it would have allowed for the jury to consider the veracity or the credibility of the accounts that were given by the two key witnesses against him, which was the agent and the cooperator. Well, it only casts doubt on the agent's testimony, doesn't it? It doesn't cast any doubt into cooperating. Well, no, the cooperator also testified that everybody was in on the deal. Right, but that didn't have to do with how much moonlight was out that night. Garcia even said that your client offered him $500 to go down there, right? Garcia, well, Garcia testified that his understanding was that that $500 was going to be shared among a number of people who were going to be unloading. Nonetheless, it was my understanding from reading Garcia's testimony that your client offered him $500 to come and help unload this container. Who was split among, nonetheless, they were getting something. Well, he was going to get paid, yes, not by Garcia, not by Vasquez necessarily, but by somebody who was hiring Vasquez, and so they were asking for other people to come as well. Do you want to save some time? You've got about a minute for rebuttal. Yeah, I'd like to reserve some time. Thank you very much. Good morning, Your Honors. May it please the Court, Vicki Cho for the United States. The defendant in this case was permitted to present his full defense, which, as Your Honors have recognized, was an intent-based offense and also a general challenge to the government's thoroughness of investigation and not really mere presence. Can we back up to the basic decision about whether or not to have this chart admitted into evidence? Yes, Your Honor. Isn't that error? Your Honor, given the timing, the way in which it was introduced, we don't think it was an abuse of discretion for the District Court to decline. Why? It's a United States government document. It's perfectly reliable, and it goes directly to the testimony of the agent who said, the moon was out, as I keep thinking of Stagger Lee, the old song. Anyway, the night was clear and the moon was yellow. But he says the night was clear and the moon was yellow, and I could see everything, and they've got a U.S. government document that says the moon had set by then. Why isn't that? I can't imagine why a judge should exclude that. Well, I think the first issue is this should be treated as an evidentiary issue rather than a constitutional issue. Okay, and we'll get to that in a second. I just want to figure out why the judge, how we could justify the judge not admitting it, and why the government opposed it. The way it was introduced was at the close of the government's evidence when all of the witnesses had already testified, including the two witnesses whose testimony they supposedly countered. So? I mean, that doesn't mean anything. But it was also offered to the judge without the chart. It would have been introduced in their case. Well, there would have been no explanation for the chart, and one of the confusing things that we argue is that the chart indicated that you should add an hour if and when daylight savings time. So California jurors can add and subtract one hour? But even the defense counsel didn't know whether or not it was daylight savings time at that time, and it did make a difference. Isn't that a matter of public record? But it wasn't. I can go right now and find out whether it was daylight savings time at that time. It might have been, but the defense counsel didn't bring that up, didn't explain it to the court, and at the time it was so rushed, it was so hurried. Why don't you start from the assumption that the judge erred, abused his discretion in not admitting the chart? Sure, Your Honor. Because I think you have a hard argument to uphold the judge's ruling, and tell us why it's not reversible error. Well, it seems like the main issue is whether or not this is a constitutional error or whether or not this is evidentiary error. And I really appreciate Your Honor's hypothetical in asking what would happen if you just took out the statements from the agent Carroll and from the cooperator that he saw everyone hanging back. And I think, in fact, in this case, the jury necessarily discounted that statement because they acquitted the co-defendant. The co-defendant wasn't found at the beach. And so this is a reasonable inference to be made. The co-defendant got there, didn't know what was going on, and said, this is suspicious. They brought me out to some place at 1.30 in the morning to unload a boat on a beach. There's probably some illegality here. I don't know what it is, but I'm not hanging around. That's one thing. So I think the acquittal of the co-defendant doesn't really help your case or help his case. I think it does help, Your Honor, because I think it goes to showing that the jury recognized that not everyone was part of the same group. But he had great evidence, the co-defendant. They went down to the beach and arrested everybody there, and he wasn't there. And so his argument was, look, I went away. Sure, Your Honor. Okay, so even taking that away, this was just not a mere presence case. As you recognize in questioning counsel, there was a lot of other evidence other than just the defendant's presence at the beach that night, which was that he had gone out the night before, that he had recruited his friend to show up, and even the night before he had traveled several hours to go to the beach and waited. And I think even the fact that he told the defendant that they were unloading containers when no containers showed up the first night could have gone to the jury's assessment of what he was trying to do and whether or not he was trying to mislead the co-defendant about his actual knowledge and participation. And this isn't the defense he put on me, so I'm imagining one. What if his defense was, when I got there, I realized it was an illegal enterprise and I didn't want to be part of it, so I hung back. And the agent said, oh, no, nobody hung back. Everybody went down to the shore. Would that go to his defense? That would be a different case, Your Honor, because in this case, he had gone out the night before to the beach in the middle of the night when there's really nothing else that you could be doing there other than something illegal when you're traveling with a group of 18 people in dark clothing in an RV. Oh, no, you have strong evidence. I'm not arguing that. I'm arguing that what if his defense was, yeah, then I got scared it was marijuana and I knew it was a big deal, and so I hung back. I stayed at the top of the beach and didn't go down to the bottom, and the agent said, oh, no, everybody went down to the bottom. Would that go to the guts of his defense then? I think it would get closer, but even then, this piece of this fact is still only challenging testimony from the government as opposed to going directly to supporting his defense. So if they tried to introduce this during their case in chief, would it be different? That is when they tried to introduce it. Okay, so I see that's why it's real. They're trying to use it as affirmative evidence. They're trying to say this was a dark and cloudy night, no one could see, and when the agent tells you all this stuff, you shouldn't believe him. He has no credibility. He's lying. That's the argument they wanted to make, and they were deprived of the ability to make that argument, weren't they? No, they weren't, because they were able to cross-examine the agent, and that would have been the more appropriate time to challenge the agent with this fact because the agent testified in cross-examination conducted by both counsel that they did have flashlights, and they turned them on after they rushed the beach. Right, but before then, the agent said, we could see everything clearly, didn't need any artificial illumination or night goggles, so I could see what was going on. When he rushed the beach, there's no contest about what happens once they rush the beach. They arrest everybody there, right? Right, but I think the point of that is that this would have been a credibility determination, and so this evidence would have only been cumulative on top of what other cross-examination defense counsel was conducting. And so in terms of assessing the Miller factors, I don't think this was not the central defense. This was not a central fact for the central defense, and it was cumulative because it was just another step that they would have taken in cross-examination on a fact that didn't matter that much in this trial, given all the other evidence, that showed that defendant was more than merely present and that the government's case relied on much more than defendant being merely present. And this is not your fault, but I'll express my continual frustration in cases like this. We end up fighting over something that may not have made a difference, that the government shouldn't have opposed the introduction of, and the district judge should have introduced. And that's why we're here. And now we're reduced to arguing what would have happened had it been put in. And I appreciate your argument, and I'm not trying to second-guess people, but everybody's job will be much easier in these cases if people didn't fight over minutia. But that's a comment, not a question. And I understand and I appreciate that, Your Honor, but I think that that is one of the reasons why it does matter, or it did matter in this case when the defense counsel tried to introduce this evidence. Because, for example, during the cross-examination of the cooperator, defense counsel wanted to conduct something on recross that the district court judge thought was beyond the scope. And after some discussion, the parties were able to work it out and reopen the question of the cooperator to allow the defense counsel to do that questioning. And so had defense counsel done what he should have done, which was introduce this during the government's case at a time when he could have presented this as part of the cross-examination, there might have been a difference. But instead, he introduced it after a government had arrested without any explanation of whether or not. And I must say, you're not going to convince me on that one. Okay, Your Honor. You might be able to convince my colleagues, but not me. That's why I said so. I don't think it makes a difference when he puts it in. But if that's going to be your argument, it is. Sure, Your Honor. But then let me go to the confusion of the chart, which is that the specific time, the plus or minus one hour did make a difference because the agent testified that they set up around midnight. And with the addition of the hour for daylight savings time, if and when it was in place, the moon set for the night in question would have been 1157 p.m. Right. And they said he set up at midnight after the moon set. Correct. So it could have made a difference, and that mattered in terms of whether or not. I don't understand. You mean you couldn't have introduced and rebuttaled that it was daylight saving time or it wasn't? We didn't have access to that information. Oh, sure you did. You had access to it. Not in the courtroom. You could make a phone call. But defense counsel also had access to that information and showed up with just this one printout. If you showed up with the chart, and let's assume the chart showed that the moon was out all night, wouldn't you have been entitled to introduce it to support the agent's testimony? They cross-examine the agent, and they say, you couldn't see anything, could you? It was dark. And you get up for redirect, and you say, Your Honor, I'd like to introduce the chart from the Navy that shows that the moon was out. Do you think the judge would say that's not relevant, has nothing to do with this case? I think in that context, sure. But that's why counsel had to introduce it in cross-examination. That's silly, I think. I don't understand at all why the judge excluded the evidence. I really think we're not even getting to the real issue, what the effect of the exclusion is. And to focus on that for us. Our continued position is that it had no effect on the trial, and the defendant was fully able to present his defense. It was not really a part of his defense at all that he was hanging back and that people weren't able to see. And this could be seen in his cross-examination of Agent Carroll, where he was really focused on what didn't the government do. The government didn't take high-res infrared pictures, and the government didn't take plaster casts of footprints, and the government didn't take fingerprints. And so mere presence wasn't a part of the defense case presented to the jury at all. And even if it was, the jury instructions in total were sufficient to present this defense theory, because as we quote in our briefs, for both the conspiracy instructions and the alien embedding instructions, explain clearly to the jury that it wasn't enough that people just be affiliated with conspirators, or in terms of the alien embedding instruction, it actually says being present is not sufficient. And so to the extent mere presence was a part of the defense case, it was adequately presented through the rest of the jury instructions. And that theory was adequately presented in the evidence as well through cross-examination, and mostly through cross-examination since defense didn't do anything else. As I understand it, the agent whose testimony is under attack here is not the agent who took the statements from the defendant. Correct. Am I right? So the credibility of this agent wouldn't have anything to do with the credibility of the other agent. Is that correct? Correct. And that other agent is the one who testified that the defendant went out the night before, that the defendant knew it was marijuana. And the only thing that was really contested by defense counsel, specifically in terms of that post-arrest interview, was whether or not the defendant admitted he knew it was marijuana. And so the rest of his admissions that— I know there was a contest about what the other agent was told, but the other agent testified that the defendant told him he knew it was marijuana. Correct. But the point I was trying to make is that the other admissions already took this case outside of a mere presence case, just the fact that he went out the night before and then recruited someone else. I guess what I was trying to ask is if there was some way to cast doubt on the testimony of one agent, would that carry over to the testimony of another agent? No, Your Honor. They were completely separate. And I think that was made clear even through defense questioning, that the second agent didn't come on the scene until after all the arrests had already been made, and so he had no idea what was happening on the beach. Okay. And so just very briefly, Your Honor, unless you have any questions on the other issues. No. Okay. Thank you. Thank you, Your Honors. The government admitted that the chart could have been used to impeach Agent Carroll. Now, I mean, so they conceded the relevance of the chart. They conceded relevance during the trial. They conceded relevance now. So if it was relevant to impeach the unimpeached witness because Martinez was ripped apart, I mean, the jury had to disbelieve what he testified to. We don't know what the jury did. Don't tell us what they had to believe or disbelieve because they convicted your client. No, no, no. They had to disbelieve Martinez, the second witness who was not on scene, because he said that Garcia had guilty knowledge and admitted he had guilty knowledge in the interview, the post-arrest interview, and if they had believed that, then they wouldn't have acquitted him. But, again, we don't know what they believed and didn't believe. And that's the problem here. There's no collateral estoppel on jury verdicts. But because the district court did not allow the admission of this chart, which is what we're talking about now, and did allow a deliberate ignorance or jewel instruction into the case, we can only speculate as to why the jury acquitted. We can only speculate as to why they acquitted Garcia but not Vasquez and whether the evidence concerning what Agent Carroll saw and what the cooperators saw in the way of activity on the beach was pivotal in convicting Vasquez. We don't know whether it was or not. That's the problem. Was the cooperator on the beach? The cooperator? Yeah, the cooperator was on the beach, but he was right in line. He was like the third guy to the boat. No, but I'm saying the moonlight issue really doesn't do much with respect to the testimony of the corroborator, does it? Well, other than the fact that on cross-examination, the counsel for Garcia asked one question of him, which was, was the moon out? He said it was, so he was also wrong on that. Now, I don't know whether that was because of the way he was prepared to testify and whether they had all decided that the moon was out erroneously or not, but the bottom line is the fact that you've got these two witnesses that were unimpeached that should have been impeached, not either directly or through the admission of the chart through the case in chief of the defense, had any effect on the jury's verdict. I believe that it did for the reasons that I indicated. Thank you, counsel. Thank you. Thank you very much. It's just argued it will be submitted.
judges: Reinhardt, Smith, Hurwitz